In the Matter of WARREN POTASH et al., Petitioners, *v.* STANLEY MOLIK, as City Clerk of the City of Buffalo, Respondent.

Supreme Court, Erie County, July 16, 1962.

*David K. Floyd* for petitioners. *Elmer S. Stengel, Corporation Counsel* (*Robert A. Burrell* and *Thomas M. Daley* of counsel), for respondent.

HAMILTON WARD, J. This proceeding is brought pursuant to article 78 of the Civil Practice Act to review a determination by the respondent as City Clerk of the City of Buffalo.

The respondent has determined that a certain referendum petition protesting a local law and petitioning for a referendum thereon is invalid for want of a sufficient number of valid signatures, and for this reason did not comply with applicable law. Respondent has so certified to the Common Council of the City

of Buffalo as provided for by section 16 of the City Home Rule Law.

The Common Council of the City of Buffalo enacted a local law increasing the salaries of the members of the Common Council together with other elected city offcials, effective during their present terms of office. Such local law by the Charter of the City of Buffalo and by subdivision 8 of section 17 of the City Home Rule Law is subject to permissive referendum.

The Junior Chamber of Commerce of the City of Buffalo undertook to gather a petition protesting such local law and requiring a referendum thereon.

By computation, a valid petition requires 19,267 signatures of electors in the City of Buffalo registered to vote in Buffalo at the 1961 general election. Forty-six thousand one hundred and ninety-two signatures were obtained and the sheets containing the signatures were duly filed with the respondent City Clerk of the City of Buffalo. The respondent examined the petition pursuant to section 16 of the City Home Rule Law and for various reasons set forth in a certificate filed on March 9, 1962 with the Common Council of the City of Buffalo determined and certified that he found the petition insufficient as it did not comply with all the requirements of law. Of the 46,192 signatures on the petition, the respondent has struck down 34,357 signatures and has validated 11,835 signatures.

The petitioners in this proceeding, by their petition for a review of this determination, select a part of the determination by respondent as erroneous, namely, the determination that 19,227 signatures are invalid in that the " statement of witness form does not comply with the requirements of law ". The respondent gives no other reason in his certificate for invalidating these 19,227 signatures.

Although section 1300 of the Civil Practice Act provides for a review, either wholly or partly, it seems to this court that there cannot be a severance of a determination concerning the validity or invalidity of this protest petition. It either complies with all the requirements of law or it does not, as the case may be. The court's attention should not be directed to a single item contributing to the determination of the respondent, but the whole determination should be reviewed by the court. Public interest and substantial justice require no less. Although the individual petitioners bring this proceeding in their individual capacities, they, in fact, bring it on behalf of all the electors of the City of Buffalo and, particularly, all of those who joined their signatures in the protest referendum petition.

The authority of the court should not be limited by technicalities in pleading in a proceeding of this nature. Statutory permissive referendum is the implementation of the ancient grant of petition to government. This grant became a right and has been perpetuated in almost every charter of free men from the Magna Charta to and including the Constitution of the United States and the Constitution of the State of New York. Not only is this right protected by statute in the City Home Rule Law but also in the Town Law and Village Law. This ancient and hallowed right of petition can be destroyed and lost to the electors if circumscribed by restrictive legislation or narrow interpretation of the statutes pertaining thereto. Every liberal interpretation must be given to the legislative enactments to the end that the right of petition be preserved to the electors (City Home Rule Law, § 31). The electors of the City of Buffalo should not lose the right to referendum if it appears that the respondent City Clerk of the City of Buffalo has given a strict, narrow, technical and/or erroneous interpretation of the requirements of a protest referendum petition.

It is the responsibility of this court in this proceeding to pass upon the whole determination of the respondent in the light of the existing law. Although excellent briefs have been filed with the court, none contained controlling authority. The court, after extensive and independent research, has been unable to find an authority in point. In determining this matter, a close examination of the existing law is necessary. This must be done at some length. The applicable law is as follows: section 9 of article I of the Constitution of the State of New York, reads in part: "No law shall be passed abridging the rights of the people * * * to petition the government, or any department thereof; * * * and the Legislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."

The implementing provisions as to cities are found in the City Home Rule Law. For the purposes of this opinion, this court will consider only sections 16 and 17 thereof. Subdivision 8 of section 17 provides that permissive referendum may be had by the electors of a city when a local law increases the salary of an elective officer effective during his term of office. This is the situation here.

Section 16 provides for the manner of bringing on such referendum. No issue of timeliness is raised here. The only issues to be resolved here are the validity of signatures of electors on the petition and whether the witnesses' statements comply with the requirements of law. Section 16 provides, in part, that

the petition must be "signed and authenticated as herein required by qualified electors of such city registered to vote therein at the last preceding general election." Thus, the qualifications of signers and authenticators are limited to (1) qualified electors of such city; (2) registered to vote therein at the last general election. The requirement referred to above is as follows: "The petition may be made upon separate sheets and the signature to each sheet shall be signed and authenticated in the manner provided by the Election Law for the signing and authenticating of designated petitions *so far as applicable.*" (Emphasis supplied.) The words "so far as applicable" are of the utmost importance for there must be kept in mind that there is a wide difference in the requirements and purposes of a designating petition and the requirements and purposes of a petition for a permissive referendum. Because of these differences many of the requirements of a designating petition (Election Law, § 135) are not applicable to a referendum petition.

A designating petition is the means used to designate a candidate for a party nomination at a primary election or for election to a party position. The form for such petition is provided by section 135 of the Election Law. Thereby, the signer must be (1) a duly enrolled voter in the party of the candidate; (2) entitled to vote in the next primary election; (3) a resident of the same political unit as the candidate, and (4) a resident of the same political unit as the witness.

A valid designating petition must contain all the items set forth in the form provided for by section 135 of the Election Law and in substantially the form therein provided. There are valid reasons for each item in a designating petition, some of which items, however, are not applicable to a permissive referendum petition.

By an examination of section 135 of the Election Law, it is patent that no part of subdivision 2 thereof is applicable to a protest permissive referendum petition except so much of the last sentence thereof which reads: "In witness whereof I have hereunto set my hand". The words "the day and year placed opposite my signature" are unnecessary and inapplicable to a protest permissive referendum petition for the following reasons: (1) a designating petition cannot be circulated or signed earlier than eleven weeks before the primary election. Thus, the date before the signature is material to a designating petition as "a signature made earlier than eleven weeks before the primary election shall not be counted" (Election Law, § 136, subd. 5); (2) "If an enrolled voter shall sign any petition or

petitions designating a greater number of candidates for public office or party position than the number of persons to be elected thereto his signatures, if they bear the same date, shall not be counted upon any petition, and if they bear different dates shall be counted in the order of their priority of date, for only so many designees as there are persons to be elected." (Election Law, § 136, subd. 4.)

For these two reasons the date of signing must appear before the signature on a designating petition in order for the examiner thereof to test the validity of such signature as to timeliness and duplication. There are no similar or other reasons for a date to appear before a signature on a protest referendum petition. Obviously, no petition would be circulated before the enactment of the local law protested. There is no limitation on the earliest date on which a protest referendum petition may be circulated and signed. The only requirement is that it be filed within 45 days after the adoption of the local law protested. A date before the signature is material in the case of duplication of signatures.

As to a designating petition, the signature bearing the earliest date is counted. If there is duplication bearing the same date, none is counted. In the case of duplication on a protest referendum petition it is obvious that the above consideration does not apply and that only one signature can be counted and it makes no difference as to priority of dates or similarity of dates. For these reasons, the requirement of a date before the signature on a designating petition is not applicable to a protest permissive referendum petition and need not appear on such latter petition. If a date does appear, it should be disregarded by the examiner and this is so although the date may be erroneously given.

The respondent has struck down a large number of signatures for the reason given that there was no date preceding the signature or that the date given was erroneous. These signatures must be validated if otherwise valid.

Both a designating petition and a protest permissive referendum petition must be signed in ink. This is to avoid erasures and changes in the signature. The respondent properly struck down a number of signatures for this reason.

Also the signatures must bear the correct given name and/or initials; otherwise such signatures are not indentifiable with the register. The respondent properly struck down a number of signatures for this reason.

Also the residence of the signer must be given in the protest permissive referendum petition. Again, the respondent prop-

erly struck down a number of signatures where the residence was not given.

Also a signature shall be struck down when the signer of the witness' statement witnesses his own signature. The respondent has properly struck down such signatures.

Next are the items of the ward and election district following the signature and street address (residence). The Legislature has mandated these items in a designating petition for very sound reasons. The signer, the candidate and the witness must all be of the same political affiliation and all must reside in the same political unit and all must be eligible to vote at the next primary election. To test the validity of the signatures of the signer, all these items must appear on the face of the petition in order that they may be cross-checked as to these items by the Board of Elections.

There are no similar or other reasons for setting forth the ward and the election district following the signature and street address (residence) of the signer of a protest permissive referendum petition. The only requirements for eligibility to sign the protest petition here are: (1) the signer must be a qualified elector of the State of New York and a resident of the City of Buffalo; (2) the signer must have been registered to vote in the City of Buffalo at the last general election. No question arises as to the whereabouts in the City of Buffalo the signer resides or where the witness resides in relation to the residence of the signer. Of course, there is no question of similarity of party affiliation and no question as to whether the signer or witness is qualified to vote in the next primary election. That he is an elector in the State of New York, a resident of the City of Buffalo and was registered to vote at the last general election is sufficient.

For these reasons, the requirements that the ward and the election district be set forth following the signature and the address on a designating petition are not applicable to a protest permissive referendum petition and need not appear on a protest permissive referendum petition. If given or given erroneously, they shall be disregarded by the examiner.

On the sample petition sheet submitted to the court as an exhibit, it is found that all necessary information concerning eligibility has been stated by the signer, e.g., signature, residence in the City of Buffalo, qualified voter in the City of Buffalo, registered at the last general election in 1961. The giving of the ward and district on the sample petition is surplusage and as above, not applicable to a protest permissive referendum petition.

It is argued by the respondent that such items are necessary and applicable to test the validity of the signatures on the petition. This may be a convenience to the examiner but is nowise a necessity. Given the name and street address, the examiner can readily determine from the records of the Board of Elections whether the signer meets the requirements of eligibility to sign a protest permissive referendum petition. The convenience of the examiner should not weigh in the balance against the right of an elector duly qualified to join in a protest petition and have his name counted on such petition. To the contrary, the form of a protest permissive referendum petition should be simplified to the extreme within the mandated provisions. Every item not applicable should be stricken from a form required of a designating petition so as to avoid snares and entrapments and to make possible the expression of the electors and serve to preserve the ancient and hallowed right to petition government. If protest referendum petitions are held to a minimum of simplicity as to form and substance, they will be more readily and effectively used to correct abuses and excesses in municipal government. The electors will have a larger part in local municipal government as anticipated and provided for by the Constitution of the State of New York (art. IX) and by section 17 of the City Home Rule Law as well as the provisions of the Town Law and the Village Law not discussed here.

The examiner has struck down a very large number of signatures (1) of persons without election districts and/or ward (1,518), (2) all persons not registered in election districts and/or ward as set forth (1,961).

For the reasons given above, these signatures shall be reinstated and counted if otherwise valid.

I pass now to the question of witnesses' statements. Of the 46,192 signatures gathered by the Junior Chamber of Commerce and members of the Junior Chamber of Commerce of the City of Buffalo, the respondent struck down 23,721 signatures because of faults he found in the witnesses' statements. This number constitutes more than one half of the signatures gathered and filed. The reasons for this massive strike-down are given in the certificate filed with the Common Council of the City of Buffalo by the respondent on March 9, 1962, a copy of which certificate is attached and made a part of the petition herein, and are as follows:

" SIGNATURES VOIDED BY INVALIDITY OF STATEMENT OF SUBSCRIBING WITNESS:

" 1B who does not set forth year of last registration, incorrectly or does not set forth present election district and/or ward,

and/or election district and/or ward in last year of registration, or who is not a registered voter.........................907

" 2B who incorrectly states last year of registration, incorrectly states present residence or residence in last year of registration, or improperly executed statement............883

" 3B who fails to fill in or set forth correct number of signatures subscribed ...............................1866

" 4B who fails to fill in date of statement.................297

" 5B who fails to sign statement.....................541 ".

In addition, the respondent struck down 6,012 signatures on the ground that "petition contains substantial alterations". No illumination or specifications are given. In the light of this opinion, the alterations the respondent deemed to be substantial alterations may be alterations without substance. These signatures shall also be re-examined by the respondent in the light of this opinion.

When the members of the Junior Chamber of Commerce of the City of Buffalo commenced circulating this protest permissive referendum petition, there was appended thereto a witness' statement in the following sample form, hereinafter referred to as form "A":

" STATEMENT OF WITNESS

Either *Witness* or *Notary* Public must authenticate

I state that I am a duly qualified voter of the State of New York; reside in the City of Buffalo at the street address therein shown beneath my signature hereto; and that I was duly registered for the general election in 1961 in said City, in the Ward and election district shown below. I know each of the voters whose names are subscribed to this petition sheet containing ————signatures and each of them subscribed the same in my presence and upon so subscribing declared to me that the foregoing statement made and subscribed by him, was true.

_____
Signature of witness

_____
Street Address    Ward-Election District

Date ——————————— "

There were 19,227 signatures obtained over this type of witness' statement. For some reason not apparent, thereafter the

witness' statement appended to the sheets of the petition was in the following form, hereinafter referred to as form "B":

" STATEMENT OF WITNESS

I, —————————————————————— state: I am a duly
    (Name of Witness)

qualified voter of the State of New York, and now reside in the ——— election district of the ——— Ward, in the City of Buffalo, in the County of Erie, in such state, at ——————————
                    street

—————————————— therein. I was last registered for the
   Address

general election in the year ——— from ——————————
—————————————— in the City of Buffalo, in the County
  Street Address

of Erie, in such state. The said residence was then in the ——— election district in the ——————— Ward. I know each of the voters whose names are subscribed to this petition sheet containing ——— signatures and each of them subscribed the same in my presence and upon so subscribing declared to me that the foregoing statement, made and subscribed by them, was true.

Date ——————————————

   Signature of Witness—————————————— "

The examiner has accepted the sheets with form "B" witnesses' statement for validation but has rejected all those sheets with form "A" witnesses' statements containing 19,227 signatures, on the single ground that the "statement of the witness does not comply with the requirement of law". Also, as appears in 1-B through 5-B of the certificate above, he has struck down a very large number of signatures for faults the respondent found in the execution of the witnesses' statements accepted by him as to form.

It will be noticed from a close examination of the two forms above that they differ in form only. Form "B" contains two separate statements as to residence and ward and election district, one statement separately stating that at the time of signing the witness then lived at the given address which was then in the given ward and election district, and a further separate statement giving the address where the witness was last regis-

tered for the 1961 general election and that the residence was then in the stated ward and election district.

Respondent argues that a valid witness' statement must contain the street address, ward and district at the time of signing and the street address, ward and district at the time the witness was registered to vote at the 1961 election.

For the reasons appearing below, the requirement of a witness' statement to a designating petition is not applicable to the requirement of a witness' statement in the protest permissive referendum petition. The requirement of a designating petition that the residence, ward and district of the witness appear twice is not applicable to the requirement of the witness' statement on a protest permissive referendum petition. As a matter of fact, the witness' statement on a protest permissive referendum petition need not make any reference to the ward and election district in which the witness resides at the time of signing or at the time of registering for the 1961 election.

A close examination of the language of form " A " and form " B " discloses the interesting fact that in different language each statement contains the same information. Form " B " in two separate statements refers to the residence, the ward and district at the time of signing and at the time of registering for the 1961 election. Form " A " gives the same information by stating " reside in the City of Buffalo at the street address therein shown beneath my signature hereto." The signature is written and below that is the address followed by the ward and election district. Certainly, this refers to the present address and the present election district and ward. Then the statement continues " and that I was duly registered for the general election in 1961 in said city and ward and election district shown below." The ward and the election district shown below are those appearing below the signature. This is a clear statement that at the time the witness registered for the 1961 general election, he resided in the ward and district appearing below his signature.

It seems to this court there is no substantial variance between these two forms, a difference in language maybe, but no distinction in substance. Certainly the difference in language does not justify the striking down of 19,227 signatures by the respondent for that reason alone. The respondent erroneously determined these signatures invalid. These 19,227 signatures shall be examined by the respondent and unless otherwise invalid shall be declared valid by the respondent and so certified to the Common Council of the City of Buffalo.

This opinion could rest here except for the ordering provisions to be contained in the order to follow, but this court cannot allow the inference to arise that it is necessary and applicable to a protest permissive referendum petition that the witness' statement contain any reference to the ward or election district of the authenticating witness. The qualifications of the signer and authenticator of a protest permissive referendum petition are identical.

As determined above, the ward and the election district of the signer need not appear in such a petition, as is required in a designating petition. Such items are not applicable to a protest permissive referendum petition for the reasons given. The same considerations apply to the authenticating witness. If, by his statement, he demonstrates that he is a duly qualified voter of the State of New York, that he resides in the City of Buffalo at a given street address, and that he was duly registered for the last general election in the City of Buffalo, he has sufficiently stated his qualifications as an authenticating witness.

The present matter is probably as good an example as can be found for a court's declaration of a simple form for a protest permissive referendum petition. In the present case, the examiner has determined by applying inapplicable provisions of the Election Law that a petition containing 46,192 signatures has but 11,835 valid signatures, less than 25% of the total number of signatures signed to such petition. Certainly the electors of the City of Buffalo should not be deprived of their right to petition their local government by way of referendum by a narrow, restrictive and erroneous interpretation by the examiner of the requirements for a protest permissive referendum petition.

On all the above, it is the opinion of this court that the determination of the respondent determining and certifying that the subject petition does not comply with all the requirements of law pertaining thereto be and the same is hereby annulled in whole. The respondent is ordered to withdraw and vacate the certificate filed by him as City Clerk of the City of Buffalo with the Common Council of the City of Buffalo dated March 9, 1962, a copy of which is attached to and made a part of the petition herein.

The respondent is further ordered upon service upon him of a copy of the order to follow, to forthwith publicly commence a re-examination of the petition filed with him in the light of this opinion.

The respondent is further ordered to complete such examination within 30 days thereafter and to make a new certificate

according to such examination. It is further ordered that such new certificate shall be in lieu of or instead of the certificate filed by the respondent with the Common Council of the City of Buffalo on March 9, 1962, and such new certificate shall have the same force and effect as though filed on March 9, 1962 with the Common Council of the City of Buffalo.

It is further ordered that a copy of the order to follow be served on the Mayor of the City of Buffalo, the Comptroller of the City of Buffalo, the President of the Common Council of the City of Buffalo, and each member of the Common Council of the City of Buffalo, so that appropriate action shall be taken immediately by such officers of the City of Buffalo concerning salary increases already paid or to be paid to the public officers pursuant to Local Law Int. 9 (1961).